CLERK'S OFFICE U.S. DIST. COURT
AT DANVILLE, VA
FILED
for Roanoke
MAY 23 2012
JULIA C. DUDLEY, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| CURTIS L. MCCOY,<br>Plaintiff, | ) Civil Action No. 7:12-cv-00192<br>)<br>) |
| v. | ) **MEMORANDUM OPINION**<br>) |
| WARDEN S. K. YOUNG, et al.,<br>Defendants. | ) By: Hon. Jackson L. Kiser<br>) Senior United States District Judge |

Curtis L. McCoy, a Virginia inmate proceeding pro se, filed a civil rights complaint, pursuant to 42 U.S.C. § 1983 with jurisdiction vested in 28 U.S.C. § 1343. Plaintiff names as defendants: S.K. Young, Warden of the Pocahontas Correctional Center ("PCC"); Bandy, a Hearing Officer; Yates, the PCC Medical Administrator; A. Mitchell, a Nurse at PCC; Peggy Scarberry, a Nurse at PCC; R. Thomas, a Postal Assistant; Cartwright, an Investigator; Mr. Hammond, a Treatment Programs Supervisor ("TPS"); and PCC correctional officers ("C/O") Captain Wick, Lieutenant Buckannon, J. W. Cumbee, Craig, Johnson, and Anderson.[1] Plaintiff alleges that Cumbee used excessive force on July 23, 2011, and Yates, Mitchell, and Scarberry were deliberately indifferent to serious medical needs, in violation of the Eighth Amendment of the United States Constitution. Plaintiff alleges that Young, Craig, Wick, Buckannon, Cartwright, and Johnson failed to protect plaintiff and covered up the unconstitutional force, in violation of the Eighth and Fourteenth Amendments. Plaintiff also alleges that Craig's conduct during a body cavity search violated the Fourth Amendment.

Plaintiff filed the action in July 2011 with the United States District Court for the Eastern District of Virginia ("District Court"), and the District Court granted plaintiff leave to proceed in

---

[1] Plaintiff originally named Scarberry as "Strawberry," but a court order corrected the name. Counsel for the Correctional Defendants also noted that Buckannon should be Buchanan, Thomas should be Thomason, and Johnson should be M. Johnson. Despite this information, plaintiff did not request a change to the names, and I decline to modify the defendants' identities without additional evidence or plaintiff's request.

forma pauperis, pursuant to 28 U.S.C. § 1915(b), in October 2011. On December 22, 2011, the District Court informed plaintiff that he is responsible for serving the complaint on the defendants within 120 days, pursuant to Fed. R. Civ. P. 4(m), but directed the Clerk to notify the Office of the Attorney General of Virginia of the action, pursuant to an informal agreement between the District Court and that Office.

All but one defendant, Anderson, responded after the Clerk notified the Attorney General of Virginia. The Correctional Defendants –Young, Bandy, Thomas, Cartwright, Hammond, and Correctional Officers Capt. Wick, Lt. Buckannon, Johnson, Cumbee, and Craig – answered the complaint and filed a motion for summary judgment on January 26, 2012,[2] to which plaintiff filed a cross motion for summary judgment on February 13, 2012. The Medical Defendants – Yates, Mitchell, and Scarberry – filed a motion to dismiss and a motion for summary judgment on March 2, 2012.[3] Plaintiff did not file a response to the Medical Defendants' motions.

On March 20, 2012, the District Court noted that plaintiff had not yet served Anderson and reminded plaintiff that it was his duty to complete service of process or provide the Attorney General with enough information to identify Anderson in the time required by Rule 4(m). The District Court transferred this action to me on April 23, 2012, because all events transpired and all defendants reside within the Western District of Virginia. The time for plaintiff to identify and serve Anderson and to respond to the Medical Defendants' motions have expired, making this matter ripe for disposition. After reviewing the record, I dismiss the claims against Boyd

---

[2] The Correctional Defendants sent plaintiff a Roseboro notice on the same day. See Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975); E.D. Va. Local Civil Rule 7(K).
[3] These motions were originally filed at docket entry 24 but are now duplicated in docket entries 24 and 26. The Medical Defendants' Roseboro notice is located in a section at the end of the motions titled, "Notice."

2

and Anderson without prejudice, grant the Correctional and Medical Defendants' motions to dismiss and for summary judgment, and deny plaintiff's motion for summary judgment.

I.

Plaintiff alleges the following facts in the verified complaint. On the morning of July 23, 2011, plaintiff was in a PCC pod and noticed that uncovered cups of milk were on a table underneath a dusty air duct. When plaintiff received a food tray an hour later, plaintiff told three correctional officers in the pod that the uncovered, unrefrigerated milk was a health hazard. Plaintiff asked the officers for an informal complaint and regular grievance form, and Cumbee replied, "I ain't gon[na] give you shit. Take the milk and go to your damn cell." Plaintiff told the officers he would not drink the milk, took a fruit juice box, and walked back to the cell while telling the officers he wanted to see a sergeant. Cumbee told plaintiff, "Shut your mouth and go to your damn cell." When plaintiff explained that he had a right to talk to a sergeant, Cumbee "became belligerent[,] screaming at [him] to put [the] food tray on the damn table." Plaintiff put the tray on the table and obeyed a second order to put his hands behind his back. Cumbee then "roughed up" plaintiff by tightening the handcuffs "as tight as they would go" and pushed plaintiff's arms "so far up [his] back [he] yelled, 'You trying to break my arm. . . . Break it, Break it.'"

Cumbee escorted plaintiff into an office and "full body slammed" plaintiff into a chair, "placing [a] forearm in [plaintiff's] throat, choking [plaintiff]." Plaintiff accused Cumbee of trying to kill plaintiff, and Cumbee said, "Ain't no cameras in here, nigger. Ya'll boys don't run shit. This is my pod," with a menacing look. Cumbee walked outside the office door to use a radio, and plaintiff wheeled the chair right behind Cumbee. Cumbee turned around, pushed plaintiff's chair "extremely hard" against the back wall, and said, "Boy, get your ass back in that

3

corner." Cumbee said something to defendant Johnson, who stayed out in the hallway and then turned back toward plaintiff. Plaintiff alleges that:

> For no apparent reason, [Cumbee] just snapped. He . . . snatched me up out [of] the chair by my t-shirt and slammed me face first into the floor. Part of my face was on the bottom of a stand up fan's protruding leg. He then placed his over 200 pound weight on my head with his left knee. With his other knee, he kneed me on my rib cage on the backside[, which caused a bruise]. He then began smacking me in my face, saying, "You heard me nigger. You heard what I told you, you hear me nigger." I don't know if Johnson was his look out, but he stayed in the hallway. Cameras will show his actions. He could have stopped the assault on me or at least attempted to. He did not protect me. As I laid there, I heard a rush of running feet. Then I knew someone was coming. At the time I did not know who yanked my legs in the air. He hel[d] both legs in one arm and applied the leg irons on so tight it [made a small cut and bruise above] my left heel. . . . I tried to plead to Captain Wick[, but] he did not respond. . . . The handcuffs cut[] into my skin. I was placed in the segregation shower with the Dog leash hooked at the top of the shower on the outside cage. This caused more pain. The nurse was brought in to see me. I refuse to be seen at the time. [Nurse Scarberry] and I have had problems . . . so she left. C/O Craig removed the handcuffs and leg irons. He stated those were his and that he shackled me. After he took the handcuffs off, my wrist were [sic] swollen and cut and the back of my heel. I ask again to see the nurse. She tried to charge me so I refused again. I felt I should not have had to pay for the officers' actions. I then asked for informal complaint forms, emergency grievances, and request forms to see the magistrate. I ask that photos be taken. I was told there was no camera available by Sgt. Dye. I then filled out a request to have this done. . . . [but] I have not received a pink slip [copy of the informal complaint] yet. It's been three working days.[4]

(Compl. 9-11, 17-19.)

Although seemingly unrelated to Cumbee's use of force, plaintiff alleges that defendant Craig humiliated plaintiff, in violation of the Fourth Amendment, for telling plaintiff to "place both hands on [his] cheeks (butt) and open up [his] asshole." Plaintiff complains that Craig's comments were not standard terminology and made plaintiff feel degraded and sexually

---

[4] Plaintiff signed the complaint on July 29, 2011, six days after the alleged excessive force.

4

assaulted. Plaintiff filed an informal complaint about Craig's comment, but plaintiff believes that Craig removed the grievance from plaintiff's cell door.[5]

Plaintiff concludes that he has:

> Been denied a magistrate to file charges on C/O Cumbee for assault, my right to file grievances in order to follow my due process has been denied [sic]. I was lacerated by handcuffs and leg irons. I have pain in my head, neck, back, ribs, and wrist/heel. I was denied my right to eat.[6] They refuse to take pictures of injuries caused by C/O Cambee. C/O Johnson just watched the assault on me. There w[as] a whole pod of inmates I intend to call as witnesses that hear[d] me yell, "He's trying to kill me," and "Break my arm." I have stated my claims.

(Compl. 12.)

Plaintiff lists the claims against the defendants in their individual and official capacities as follows:

- Warden S.K. Young for his supervision of all other defendants;
- Officer Cumbee for excessive force and for assault and battery;
- Officer Craig for sexual harassment and for lacerating and scarring plaintiff's left heel with leg irons;
- Officer Johnson for watching C/O Cumbee assault plaintiff and not intervening;
- Hearings Officer Bandy for not being impartial and not viewing the video recording ;
- Medical Administrator Yates for having improperly trained staff and for interfering with a serious medical need;
- Nurse Mitchell for interfering with medical treatment and denying access to a doctor;
- Nurse Scarberry for refusing to treat plaintiff because plaintiff would not pay a co-pay;
- Capt. Wick for covering up the assault by refusing to allow any of his subordinate officers to take pictures;
- Lt. Buckannon for refusing to properly investigate the assault and for refusing to allow any of his subordinate officers to take pictures;
- Postal Assistant Thomas[7] "for refusing to allow mail to go out, redirecting it back to [plaintiff] / holding [plaintiff's] outgoing mail to the magistrate up, holding [plaintiff's] letter to the Head of DOC, Mr. Harold Clark[e,] then re-routing it back to [plaintiff] in order to cover up C/O Cumbee's actions, interfering with attempts to mail certified mail previously approved, [and for] reading [plaintiff's] outgoing mail";

---

[5] The record reveals that plaintiff received a response to this informal complaint after plaintiff filed this action.
[6] Plaintiff simply alleges that Sgt. Dye, Officer Caldwell, and Officer Craig denied plaintiff the right to eat, but Dye and Caldwell are not defendants to this action.
[7] The first time plaintiff identifies Thomas as a defendant or describes a claim against Thomas is at the end of the complaint where plaintiff lists the claims.

5

- C/O Anderson for "refusing [plaintiff] [his] due process right 35 times while in segregation [by] refusing [to give plaintiff] informal complaint forms on [July 29, 2011,] and 25 times on [July 28, 2011,] a total of 60 times";
- Investigator Cartwright for failing to immediately investigate Cumbee's actions;
- TPS Hammond for "interfering with [plaintiff's] due process rights"; and
- Psychologist Boyd[8] for refusing to give plaintiff psychological treatment after Cumbee's alleged assault and for preventing plaintiff's access to a doctor.

(Compl. 13-14.) Plaintiff requests $400,000 in compensatory damages and $350,000 in punitive damages.

II.

I must dismiss any action or claim filed by an inmate if I determine that the action or claim is frivolous or fails to state a claim on which relief may be granted. See 28 U.S.C. §§ 1915(e)(2), 1915A(b)(1); 42 U.S.C. § 1997e(c); Fed. R. Civ. P. 12(b)(6). The first standard includes claims based upon "an indisputably meritless legal theory," "claims of infringement of a legal interest which clearly does not exist," or claims where the "factual contentions are clearly baseless." Neitzke v. Williams, 490 U.S. 319, 327 (1989). The second standard is the familiar standard for a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), accepting a plaintiff's factual allegations as true. A complaint needs "a short and plain statement of the claim showing that the pleader is entitled to relief" and sufficient "[f]actual allegations . . . to raise a right to relief above the speculative level. . . ." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal quotation marks omitted). A plaintiff's basis for relief "requires more than labels and conclusions. . . ." Id. Therefore, a plaintiff must "allege facts sufficient to state all the elements of [the] claim." Bass v. E.I. Dupont de Nemours & Co., 324 F.3d 761, 765 (4th Cir. 2003).

---

[8] Plaintiff lists Boyd as a defendant on the last page of the verified complaint, but Boyd has not been added to the docket and, consequently, has never been served. Accordingly, I join "Ms. Boyd, psychologist" as a defendant and will review the claim against her via 28 U.S.C. § 1915 and § 1915A.

6

Determining whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009). Thus, a court screening a complaint under Rule 12(b)(6) can identify pleadings that are not entitled to an assumption of truth because they consist of no more than labels and conclusions. Id. Although I liberally construe pro se complaints, Haines v. Kerner, 404 U.S. 519, 520-21 (1972), I do not act as the inmate's advocate, sua sponte developing statutory and constitutional claims the inmate failed to clearly raise on the face of the complaint. See Brock v. Carroll, 107 F.3d 241, 243 (4th Cir. 1997) (Luttig, J., concurring); Beaudett v. City of Hampton, 775 F.2d 1274, 1278 (4th Cir. 1985). See also Gordon v. Leeke, 574 F.2d 1147, 1151 (4th Cir. 1978) (recognizing that a district court is not expected to assume the role of advocate for a pro se plaintiff).

A.   Plaintiff fails to state a due process or access to courts claim against Anderson.

Plaintiff argues that Anderson violated due process, guaranteed by the Fourteenth Amendment, by not giving plaintiff an informal grievance form despite plaintiff's sixty requests on July 28 and 29, 2011. Plaintiff's PCC grievance record shows that plaintiff filed more than forty informal complaints between July and October 13, 2011, and plaintiff fails to explain how plaintiff was unable to receive an informal complaint form from other staff on July 28 or 29, 2011, or was prevented from filing an informal complaint after July 29, 2011. Regardless, it is well established in this circuit that there is no constitutional right to participate in grievance proceedings, and plaintiff's due process claim fails as a matter of law. Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994).

The inability to file informal grievances does not violate plaintiff's First Amendment right of access to courts. Inmates have a fundamental right to "adequate, effective, and

7

meaningful" access to courts. Bounds v. Smith, 430 U.S. 817, 822 (1977). To prove a violation of this right, an inmate must show an actual injury to the inmate's effort to litigate an action. Strickler v. Waters, 989 F.2d 1375, 1383 (4th Cir. 1993). Plaintiff has not demonstrated how Anderson caused any specific harm to plaintiff's ability to prosecute his claims. Moreover, plaintiff failed to exhaust administrative remedies, as discussed infra, by not filing any regular grievances or appealing a denied regular grievance, not because plaintiff could not file informal complaints on July 28 and 29, 2011. Because plaintiff has not demonstrated how Anderson caused any specific harm to litigation efforts, an access to courts claim against Anderson must also be dismissed without prejudice, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and § 1915A(b)(1).

B.  Plaintiff fails to state a claim of deliberate indifference to a serious medical need.

A plaintiff must show that a defendant acted with deliberate indifference to a serious medical need to state a claim under the Eighth Amendment for the unconstitutional denial of medical assistance. Estelle v. Gamble, 429 U.S. 97, 104 (1976). Deliberate indifference requires a state actor to have been personally aware of facts indicating a substantial risk of serious harm, and the official must have actually recognized the existence of such a risk. Farmer v. Brennan, 511 U.S. 825, 838 (1994). "Deliberate indifference may be demonstrated by either actual intent or reckless disregard." Miltier v. Beorn, 896 F.2d 848, 851 (4th Cir. 1990). See Parrish ex rel. Lee v. Cleveland, 372 F.3d 294, 303 (4th Cir. 2004) ("[T]he evidence must show that the official in question subjectively recognized that his actions were 'inappropriate in light of that risk.'"). "A defendant acts recklessly by disregarding a substantial risk of danger that is either known to the defendant or which would be apparent to a reasonable person in the defendant's position." Miltier, 896 F.2d at 851-52. A health care provider may be deliberately indifferent when the

8

treatment provided is so grossly incompetent, inadequate, or excessive as to shock the conscience or is intolerable to fundamental fairness. Id. at 851. A medical need serious enough to give rise to a constitutional claim involves a condition that places the inmate at a substantial risk of serious harm, such as loss of life or permanent disability, or a condition for which lack of treatment perpetuates severe pain. Sosebee v. Murphy, 797 F.2d 179, 181-83 (4th Cir. 1986). A prisoner's disagreement with medical personnel over the course of treatment does not state a § 1983 claim. Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985); Russell v. Sheffer, 528 F.2d 318, 319 (4th Cir. 1975) (per curiam).

      1.      Plaintiff fails to state a claim against Boyd.

Plaintiff simply alleges that Boyd "refus[ed] me psychological treatment after being brutally beaten by C/O Cumbee and refus[ed] to allow me to see Dr. Rooker." (Compl. 14.) Plaintiff does not describe how Boyd was aware of, or recklessly disregarded, any serious medical need that warranted psychological treatment. See Bowring v. Godwin, 551 F.2d 44, 47-49 (4th Cir. 1977) (describing a serious medical need in the context of mental health services). Plaintiff's claim that Boyd would not allow plaintiff to see Dr. Rooker does not state a claim for an unconstitutional denial of medical care. Nurses were ready to treat plaintiff's injuries, but he refused medical care. The fact that plaintiff may prefer to have Boyd summon a doctor to diagnose or treat the injuries instead of nurses does not state an Eighth Amendment claim. Plaintiff's medical record shows that plaintiff was placed on the doctor's call list on August 1, 2011, and that plaintiff was prescribed antibiotic cream and naproxen on August 3, 2011. (Pl.'s Ex. 1 (no. 23-1).) Accordingly, plaintiff fails to sufficiently describe any serious medical need to warrant Boyd's services; how Boyd was deliberately indifferent to that serious medical need; how Boyd deliberately denied or interfered with a prison doctor's treatment; or how any delay

9

caused or aggravated any significant injury. Accordingly, plaintiff's claims against Boyd are dismissed without prejudice, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and § 1915A(b)(1).

    2.     Plaintiff fails to state a claim against the Medical Defendants.

Plaintiff similarly fails to state a claim against nurses Mitchell, Scarberry, and Yates.[9] Plaintiff argues that the Medical Defendants were deliberately indifferent because Nurse Mitchell "interfer[ed] with the treatment of [his] wounds . . . and den[ied] plaintiff a doctor"; Nurse Scarberry denied plaintiff medical care because plaintiff refused to pay the co-pay; and Nurse Yates supervised improperly trained staff and "interfere[ed] with a serious medical need."[10]

Plaintiff's labels and conclusions about Mitchell's and Yates' "interference" are not sufficient to state a claim. Plaintiff refused treatment from Nurse Scarberry because plaintiff did not like Nurse Scarberry and because plaintiff did not want to pay the co-pay. Therefore, any lack of treatment was not a result of Nurse Scarberry's act or omission. It is not unconstitutional to require an inmate, who has available funds, to pay a co-pay to receive medical treatment.[11] See, e.g., City of Revere v. Massachusetts Gen. Hosp., 463 U.S. 239, 245 n.7 (1983) ("Nothing we say here affects any right a hospital or government entity may have to recover from a detainee the cost of medical services provided to him."); Johnson v. Dep't of Pub. Safety & Corr.

---

[9] Accordingly, the Medical Defendants are entitled to qualified immunity because plaintiff's fails to describe how the Medical Defendants violated a constitutional or statutory right. See Saucier v. Katz, 533 U.S. 194, 200-01 (2001) (stating qualified immunity involves a two-step inquiry: (a) whether the plaintiff's allegations state a claim that a defendant's conduct violated a constitutional or statutory right; and (b) whether that right was clearly established), overruled in part by Pearson v. Callahan, 555 U.S. 223 (2009) (permitting lower courts the discretion to determine which qualified immunity prong to analyze first).
[10] Plaintiff does not allege that Yates trained or was responsible for training the other medical defendants.
[11] Plaintiff does not allege that medical treatment was denied because plaintiff did not have funds available to pay a co-pay.

Servs., 885 F. Supp. 817, 820 (D. Md. 1995) (finding that a co-pay policy does not represent intolerable treatment that shocks the conscience).

Plaintiff does not state a supervisory liability claim against Yates. To establish supervisory liability under § 1983, a plaintiff must show that: 1) the supervisor had actual or constructive knowledge that a subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to people like the plaintiff; (2) the supervisor's response to that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices"; and (3) that there was an "affirmative causal link" between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff. Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir. 1994). Plaintiff fails to describe a constitutional violation involving Mitchell and Scarberry and fails to describe how Yates knew that any subordinate's conduct posed a pervasive and unreasonable risk of constitutional injury. Supervisory liability under § 1983 may not be predicated on the theory of respondeat superior. See Monell v. Dep't of Soc. Servs., 436 U.S. 658, 663 n.7 (1978); Slakan v. Porter, 737 F.2d 368 (4th Cir. 1984).

### III.

A party is entitled to summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Material facts are those necessary to establish the elements of a party's cause of action. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A genuine issue of material fact exists if, in viewing the record and all reasonable inferences drawn therefrom in a light most favorable to the non-moving party, a reasonable fact-finder could return a verdict for the non-movant. Id. The

11

moving party has the burden of showing – "that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). If the movant satisfies this burden, then the non-movant must set forth specific, admissible facts that demonstrate the existence of a genuine issue of fact for trial. Fed. R. Civ. P. 56(c); Celotex, 477 U.S. at 322-23. A party is entitled to summary judgment if the record as a whole could not lead a rational trier of fact to find in favor of the non-movant. Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991). Conversely, summary judgment is inappropriate if the evidence is sufficient for a reasonable fact-finder to return a verdict in favor of the non-moving party. Anderson, 477 U.S. at 248.

Even if there is no dispute as to the evidentiary facts, summary judgment is not appropriate where the ultimate factual conclusions to be drawn are in dispute. Overstreet v. Ky. Cent. Life Ins. Co., 950 F.2d 931, 937 (4th Cir. 1991). A court may not resolve disputed facts, weigh the evidence, or make determinations of credibility. Russell v. Microdyne Corp., 65 F.3d 1229, 1239 (4th Cir. 1995); Sosebee v. Murphy, 797 F.2d 179, 182 (4th Cir. 1986). The court accepts as true the evidence of the non-moving party and resolves all internal conflicts and inferences in the non-moving party's favor. Charbonnages de France v. Smith, 597 F.2d 406, 414 (4th Cir. 1979). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." Scott v. Harris, 550 U.S. 372, 380 (2007). Furthermore, a party "cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another." Beale v. Hardy, 769 F.2d 213, 214 (4th Cir. 1985). Therefore, "[m]ere unsupported speculation . . . is not enough to defeat a summary judgment motion." Ennis v. Nat'l Ass'n of Bus. & Educ. Radio,

Inc., 53 F.3d 55, 62 (4th Cir. 1995). A plaintiff cannot use a response to a motion for summary judgment to correct deficiencies in a complaint challenged by a defendant's motion for summary judgment. See Cloaninger v. McDevitt, 555 F.3d 324, 336 (4th Cir. 2009) (noting that a plaintiff may not amend a complaint through argument in a brief opposing summary judgment); Gilmour v. Gates, McDonald & Co., 382 F.3d 1312, 1315 (11th Cir. 2004) (same).

The Correctional and Medical Defendants argue that plaintiff did not exhaust administrative remedies for any of the claims. The Prison Litigation Reform Act provides that "[n]o action shall be brought with respect to prison conditions under [§ 1983] . . ., by a prisoner confined in any jail, prison or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The exhaustion requirement is mandatory and "applies to all inmate suits about prison life[.]" Porter v. Nussle, 534 U.S. 516, 524, 532 (2002). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules." Woodford v. Ngo, 548 U.S. 81, 90 (2006). When a prison provides an administrative grievance procedure, the inmate must file a grievance raising a particular claim and pursue it through all available levels of appeal to "properly exhaust." Id.; Dixon v. Page, 291 F.3d 485, 490-91 (7th Cir. 2002).

"[A]n administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it." Moore v. Bennette, 517 F.3d 717, 725 (4th Cir. 2008). "[W]hen prison officials prevent inmates from using the administrative process . . ., the process that exists on paper becomes unavailable in reality." Kaba v. Stepp, 458 F.3d 678, 684 (7th Cir. 2006). An inmate's failure to exhaust is an affirmative defense that a defendant has the burden to prove. Jones v. Bock, 549 U.S. 199, 216 (2007).

13

The Correctional and Medical Defendants rely on affidavits provided by C. Turner, the PCC Grievance Coordinator who has access to plaintiff's applicable grievance records. Turner avers that she reviewed plaintiff's grievance records and determined that plaintiff did not exhaust available administrative remedies as required by Virginia Department of Corrections ("VDOC") Department Operating Procedure ("DOP") 866.1, Inmate Grievance Procedure.[12]

DOP 866.1 is a mechanism for inmates to resolve complaints, appeal administrative decisions, and challenge policies and procedures. The process provides correctional administrators means to identify potential problems and, if necessary, correct those problems in a timely manner. All issues are grievable except issues about policies, procedures, and decisions of the Virginia Parole Board; disciplinary hearing penalties and/or procedural errors; state and federal court decisions, laws, and regulations; and other matters beyond the VDOC's control.

Inmates are oriented to the inmate grievance procedure when they enter the VDOC and when they are transferred to different facilities. Prior to submitting a grievance, the inmate must make a good faith effort to informally resolve the issue by submitting an informal complaint form, which is available in housing units. If not informally resolved, the inmate must file a regular grievance within thirty calendar days from the date of the occurrence or incident. Only one issue per grievance may be addressed. Regular grievances may receive three levels of

---

[12] Defendants rely upon the affidavit of a Grievance Coordinator, who describes DOP 866.1 and has access to plaintiff's grievance records. However, defendants did not docket a copy of the policy. DOP 866.1 provides that inmates, such as plaintiff, are informed of the available grievance procedures when they enter the VDOC and when transferred to a different VDOC facility. Plaintiff does not deny that he is familiar with VDOC grievance procedures, and plaintiff's grievances support the conclusion that plaintiff knows of DOP 866.1's requirements. Accordingly, I take judicial notice of DOP 866.1, which is available at http://www.vadoc.state.va.us/about/procedures/documents/800/866-1.pdf and was the policy in force during plaintiff's grievances. See Fed. R. Evid. 201(b)(2) (permitting judicial notice of facts which "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned"); Perry v. Johnson, No. 3:10-cv-630, 2011 U.S. Dist. LEXIS 85431, 2011 WL 3359519 (E.D. Va. Aug. 3, 2011) (citing Bowler v. Ray, No. 7:07-cv-00565, 2007 U.S. Dist. LEXIS 88133, 2007 WL 4268915 (W.D. Va. Nov. 30, 2007)). Defendants are reminded to docket a copy of a VDOC policy when the policy is used to support a motion for summary judgment.

review. A facility's Warden or Superintendent conducts the first, "Level I" review of the grievance. If the inmate is unsatisfied with the determination, the inmate may appeal the determination to Level II, which is done by the Regional Ombudsman/Director. For most issues, Level II is the final level of review. For the few issues appealable to Level III, the Deputy Director or Director of the VDOC conducts the final review of the regular grievance.

Grievances that do not meet the filing requirements of DOP 866.1 are returned to the inmate within two working days from the date of receipt. The inmate is instructed how to remedy any problems with the grievance when feasible. A copy is made of all grievances and the original is returned to the inmate with reason for the return noted on the second page of the grievance form. If an inmate wishes a review of the intake decision for any grievance, the inmate may send the grievance to the Regional Ombudsman. There is no further review of the intake decision.

Turner avers that plaintiff filed 44 informal complaints between July 2011 and plaintiff's transfer on October 13, 2011. Turner notes that many of the informal complaints were repetitive, but plaintiff received a response to all 44 informal complaints. If plaintiff was not satisfied with a response to an informal grievance, DOP 866.1 permitted plaintiff to file a regular grievance about the same issue raised in the informal complaint. Plaintiff failed to file regular grievances for nearly all 44 informal complaints.

Plaintiff filed an informal complaint on July 23, 2011, claiming that Craig violated his rights by making him open his butt cheeks during a strip search. Sgt. Watts responded on August 6, 2011, stating that Craig correctly conducted the strip search. Plaintiff did not file a regular grievance about the strip search.

Plaintiff filed a regular grievance on August 10, 2011, complaining that Cumbee assaulted him and requesting that photographs be taken of the injuries. R. Walz responded to the grievance on August 11, 2011, informing plaintiff that the grievance was a request for services and did not meet the intake criteria for a regular grievance. Staff returned the rejected regular grievance to plaintiff, and plaintiff did not appeal Walz's intake decision.

Plaintiff filed a second regular grievance on September 23, 2011, claiming to be afraid of Cumbee and requesting that Cumbee be kept away from plaintiff. Turner rejected the regular grievance on the same day because it lacked sufficient information. Staff returned the rejected regular grievance to plaintiff, and plaintiff did not appeal Turner's intake decision.

Plaintiff filed a third regular grievance on September 25, 2011, demanding that Cumbee be disciplined for the alleged excessive force. Turner rejected the regular grievance on October 4, 2011, because plaintiff did not timely file it. Staff returned the rejected regular grievance to plaintiff, and plaintiff did not appeal Turner's intake decision.

Turner did not find any regular grievances about Cumbee's alleged excessive force, profanity, or racial epitaphs; Craig denying plaintiff a meal; staff mishandling plaintiff's mail; Scarberry's refusal to treat plaintiff; A. Mitchell interfering with treatment or access to a doctor; or Yates' improper hiring or training of staff. Turner concludes that plaintiff did not submit any "other regular grievances related to his complaints in this lawsuit or any other complaints during the time period of July 2011 through October 2011" and that plaintiff "clearly did not follow established procedures in his attempts to administratively resolve his complaints." (Turner Aff. (no. 19-1) ¶ 17.)

In a cross motion for summary judgment, plaintiff admits he "inartfully drafted" the August 10, 2011, informal complaint that Walz rejected as a request for services. Plaintiff

16

argues that Walz's response made the grievance procedure unavailable because Walz should have rejected the informal complaint for insufficient information. However, 866.1 allowed plaintiff to appeal Walz's intake decision to a regional ombudsman, a fact clearly described on the regular grievance returned to plaintiff. Plaintiff's decision to not appeal the intake decision does not make grievance procedures unavailable.

Plaintiff further argues that I should consider his excessive force claim exhausted because plaintiff wrote a letter about Cumbee to VDOC Director Harold Clarke, who, plaintiff alleges, forwarded the letter to VDOC Operations Director G. K. Washington. Plaintiff relies on Washington's letter, dated September 2, 2011, as support, which reads:

> Thank you for your letter to the Department of Corrections Headquarters. The letter was forwarded to this office for a response. In your letter, you describe an assault on you by Officer Cumbee. You want an investigation into the aforementioned concern or a transfer.
>
> You took the necessary actions by filing numerous informal complaints, which were received by Pocahontas [Correctional Center]. However, you failed to file any grievances. This gives the impression that the informals adequately addressed your concerns. Nonetheless, this office will review the circumstances further if they are received in the form of a Level II grievance appeal. You should give the facility the opportunity to address your complaint first. By using Operating Procedure 866.1, you can initiate an investigation yourself.

(Pl.'s Ex. 5 (no. 23-6) 1.) Plaintiff believes that the letter to Director Clarke, which plaintiff assumes Clarke read and forwarded to Washington, eliminates the need to file the necessary grievances per DOP 866.1.

Plaintiff's letter to Director Clarke does not constitute exhaustion. DOP 866.1 does not provide any exception to filing a regular grievance and receiving a Level I response from a warden or superintendent before contacting a VDOC deputy director or the VDOC Director. Washington explained that he could not assist plaintiff until plaintiff filed a regular grievance

17

and appealed the Level I response. Moreover, the VDOC Director conducts a Level III review of grievances involving only VDOC procedures, the Publication Review Committee, or Faith Review Committee. None of plaintiff's issues would qualify for Level III review by the VDOC Director.

Plaintiff relies on Perez v. Wisconsin Department of Corrections, 182 F.3d 532 (7th Cir. 1999), to argue that excessive force and medical deliberate indifference claims do not need to be exhausted.[13] In Perez, the Seventh Circuit Court of Appeals created an exception to the exhaustion requirement for claims that could not be remedied by an administrative grievance. The Perez court explained:

> It is possible to imagine cases in which the harm is done and no further administrative action could supply any "remedy." . . . Suppose the prisoner breaks his leg and claims delay in setting the bone is cruel and unusual punishment. If the injury has healed by the time suit begins, nothing other than damages could be a "remedy," and if the administrative process cannot provide compensation then there is no administrative remedy to exhaust.

182 F.3d at 538 (original emphasis). However, Booth v. Churner, 532 U.S. 731 (2001), overruled Perez's narrow view of administrative exhaustion by requiring "exhaustion of all administrative procedures that have 'authority to take some action in response to a complaint,' even if the procedure cannot provide the only relief that the prisoner is seeking, e.g., money damages." Larkin v. Galloway, 266 F.3d 718, 723 (7th Cir. 2001) (citing Booth, 532 U.S. at 736-38). The Seventh Circuit no longer recognizes the Perez exception, and I decline to apply the overruled exception to this case.

Plaintiff fails to refute defendants' evidence of his failures to exhaust administrative remedies for any of the claims raised in this action. Plaintiff further fails to establish that

---

[13] Plaintiff also cites Brazelton v. Myatt, 1999 U.S. Dist. LEXIS 16521, 1999 WL 966435 (N.D. Ill. Oct. 19, 1999), which merely relied on Perez to hold that an Eighth Amendment medical claim did not need to be exhausted.

grievance procedures were unavailable, and plaintiff's decisions to not pursue administrative remedies preclude recovery in this action. Accordingly, the Correctional and Medical Defendants are entitled to summary judgment.

IV.

For the foregoing reasons, I join "Ms. Boyd, psychologist" as a defendant, dismiss all claims against Boyd and Anderson without prejudice for failing to state a claim upon which relief may be granted, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and § 1915A(b)(1); grant the Correctional and Medical defendants' motions to dismiss and for summary judgment; and deny plaintiff's motion for summary judgment. I decline to exercise supplemental jurisdiction over any state-law claims, pursuant to 28 U.S.C. § 1367(c)(3).

The Clerk is directed to send copies of this Memorandum Opinion and the accompanying Order to plaintiff and counsel of record for defendants.

**ENTER**: This 23rd day of May, 2012.

Senior United States District Judge